UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 MAY 15 PM 3: 31

CLERK

BY_____
          DEPUTY CLERK

GERALD GENSOLI, )
    Plaintiff, )
 )
v. )    Case No. 2:25-cv-829
 )
FEDEX GROUND PACKAGE )
SYSTEM, INC., )
    Defendant. )

## ORDER
(Doc. 594)

Plaintiff Gerald Gensoli brought this action against Defendant FedEx Ground Package System, Inc. ("FedEx") alleging FedEx failed to pay him overtime compensation as required by the Federal Labor Standards Act ("FLSA") and Vermont law. FedEx filed this Motion for Summary Judgment as to all claims raised by Mr. Gensoli. (Doc. 594 at 1.) Mr. Gensoli opposes the motion, contending that genuine disputes of material fact remain. (Doc. 679 at 2.) For the reasons discussed below, FedEx's Motion for Summary Judgment (Doc. 594) is DENIED.

## Undisputed Facts

FedEx operates a nationwide package delivery network and contracts with businesses, referred to as Independent Service Providers ("ISPs"), to provide pickup and delivery services between customers and FedEx sorting stations. (Doc. 596 at 9; Doc. 679 at 9.) The ISPs' employees pick up and deliver the packages. (Doc. 596 at 9.) ISPs enter into agreements with FedEx under which ISPs agree to treat their personnel as their own employees. (Doc. 597 at 15, ¶ 6.2.)

During the period relevant to his claims, Mr. Gensoli worked as a delivery driver in Vermont for two ISPs: 2LS4G Corp. from April 18, 2017 through July 21, 2017, and James J.

Miner, Inc. from July 25, 2017 through April 28, 2018. (Doc. 596 at 9; Doc. 679 at 9–10.) FedEx's records reflect that, from April 18, 2017 to April 28, 2018, Mr. Gensoli delivered packages either in vehicle number 403161 or in vehicles of "unknown" weight. (Doc. 596 at 14.) FedEx's records documenting the weight of delivery vehicles are incomplete because FedEx receives this data from the ISPs. If the ISPs do not provide the information, FedEx does not have the data to include in its records. (Doc. 678 at 3, ¶ 7.) Mr. Gensoli also drove rental vehicles during his employment with both ISPs and testified that one of the rental vehicles he drove was a pickup truck with a box on the back. (Doc. 596 at 14, n.4; Doc. 730 at 11–12; *see also* Doc. 597 at 42–43, 97:18–98:23; *id.* at 43, 100:10–25.)

Mr. Gensoli testified that he was initially paid $620 per week and later received a raise to $700 per week. (Doc. 678 at 6, ¶ 21; Doc. 596 at 15–16.) Mr. Gensoli also testified that, on average, he worked between fifty and sixty hours per week. (*See* Doc. 680 at 161, 147:8–10).

## Procedural Background

On August 29, 2017, FedEx drivers filed a class action complaint in the District of Massachusetts. On November 27, 2018, the court limited the class action to drivers who worked inside Massachusetts, thereby excluding plaintiffs who worked outside Massachusetts. The non-Massachusetts FedEx drivers then filed a class action complaint in the Western District of Pennsylvania, the district in which FedEx is located, on December 21, 2018. On September 30, 2019, the Magistrate Judge conditionally certified a class of non-Massachusetts FedEx drivers. (Doc. 107 at 1.)

Mr. Gensoli filed his opt-in form in the case in the Western District of Pennsylvania on July 10, 2020. (Doc. 679 at 10.) He later became a named plaintiff after filing an amended

2

complaint on August 24, 2021, at which time he also added a claim for violations of Vermont overtime law. (*Id.*)

On July 24, 2024, the non-Massachusetts drivers filed a Second Amended Complaint withdrawing their class action allegations. (Doc. 765 at 4.) On September 29, 2025, the Pennsylvania court severed the claims of the twelve named plaintiffs and transferred the cases to the federal district courts in the plaintiffs' respective states of employment. As a result, Mr. Gensoli's case was transferred to this district.

## Standard

The court must grant a motion for summary judgment if the moving party demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 39–40 (quoting *Anderson*, 477 U.S. at 248).

At the summary judgment stage, the function of the judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When the moving party has carried its burden, the nonmoving party must produce sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by

3

asserting a metaphysical doubt as to the material facts." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (citation modified). When reviewing the evidence to determine whether summary judgment is appropriate, however, "the court must *draw all reasonable inferences in favor of the nonmoving party*, even though contrary inferences might reasonably be drawn." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation modified). The court may not properly consider the record in piecemeal fashion but must "review all of the evidence in the record" as a whole, disregarding all evidence favorable to the moving party that the jury is not required to believe. *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) (citation modified).

### Analysis

The Motor Carrier Act exempts from overtime eligibility certain employees, including, among others not relevant here, drivers of motor vehicles in interstate commerce. *See* 29 U.S.C. §§ 207, 213(b)(1); 29 C.F.R. § 782.2; 49 U.S.C. §§ 13501, 31502. FedEx contends Mr. Gensoli's FLSA claim fails because he was subject to the Motor Carrier Act exemption and did not produce evidence sufficient to show that he qualified for the "light vehicle" exception to the exemption— that is, that he drove a vehicle weighing 10,000 pounds or less. (Doc. 596 at 11–15.) FedEx argues its records show Mr. Gensoli drove either a heavy vehicle or vehicles of unknown weight, that Mr. Gensoli did not establish the Gross Vehicle Weight Rating ("GVWR") of any allegedly light vehicle, and that Mr. Gensoli cannot now treat vehicles of unknown weight as light vehicles after taking the opposite position earlier in the case. (*Id.* at 13–15; Doc. 730 at 9–13.)

FedEx further argues Mr. Gensoli did not produce evidence that his ISPs failed to pay him any overtime premium and that any FLSA claim accruing before July 10, 2018 is time-barred because he cannot prove willfulness or entitlement to equitable tolling. (Doc. 596 at 15–21; Doc. 730 at 13–19.) FedEx also maintains Mr. Gensoli is not entitled to overtime under Vermont law

and that, if either of Mr. Gensoli's claims survives, any overtime damages must be calculated based on hours actually worked with only an additional half-time premium. (Doc. 596 at 24–28.)

Mr. Gensoli asserts that summary judgment should be denied because genuine disputes of material fact remain regarding whether he drove light vehicles and whether he was paid all overtime owed. (Doc. 679 at 10–16.) According to Mr. Gensoli, FedEx has not carried its burden on the light vehicle issue, FedEx's scanner data is incomplete, and Mr. Gensoli's testimony about driving a ten-foot U-Haul and a Chevrolet Silverado is sufficient to create a triable issue on overtime eligibility. (Doc. 679 at 10–13.) Mr. Gensoli further argues that his testimony about working more than forty hours per week for a flat rate creates a fact issue as to unpaid overtime and that willfulness and equitable tolling preclude summary judgment on the FLSA's statute of limitations. (*Id.* at 14–16.) Mr. Gensoli also contends that any overtime wages should be calculated using a forty-hour divisor and multiplying the result by one-and-a-half to reflect the compensation for overtime. (*Id.* at 24–27.)

## I.      Summary judgment is not warranted on Mr. Gensoli's FLSA overtime claim.

### A.  Whether Mr. Gensoli Is Exempt From the Overtime Requirement Under the Motor Carrier Act

Mr. Gensoli does not appear to dispute that the Motor Carrier Act *exemption* (49 U.S.C. § 31501) applies to this case. (*See, e.g.*, Doc. 679 at 8.) An employee of a motor carrier may still be entitled to overtime, however, if their job "in whole or in part" affects the safe operation of vehicles 10,000 pounds or lighter. SAFETEA-LU Technical Corrections Act, Pub. L. No. 110-244, §§ 306(a), (c), 122 Stat. 1572 (2008). This is known as the "light vehicle" *exception* to the Motor Carrier Act *exemption* to the FLSA's overtime requirement. The parties disagree about whether Mr. Gensoli qualifies for the "light vehicle" *exception* and, therefore, whether he is entitled to overtime.

### i. Mr. Gensoli has shown sufficient evidence to allow a reasonable factfinder to conclude the light vehicle exception applies.

The parties disagree about who has the burden to show whether the "light vehicle" exception applies. Mr. Gensoli acknowledges there is a split of authority on this question but contends that FedEx should bear the burden of showing that an employer does not need to pay overtime—for example, that workers do not fall within the light vehicle exception. (Doc. 679 at 11.) Because FedEx's data shows that several of the vehicles Mr. Gensoli drove are "unknown" and that their weight is therefore unknown, Mr. Gensoli contends FedEx has not met its burden to show that the light vehicle exception does not apply (drawing all inferences in favor of Mr. Gensoli). (*Id.* at 12.) FedEx contends employers must prove whether an *exemption* to the FLSA applies—in this situation, the Motor Carrier Act—but that employees must prove any *exceptions* to the exemption. (Doc. 730 at 10.)

The court need not determine whether Mr. Gensoli has the burden to show the light vehicle exception applies at this stage. Even if Mr. Gensoli does have the burden, he has introduced sufficient evidence to meet his burden.

"The meaning of this statutory text [of the light vehicle exception] is plain. Even though a driver is subject to [the Department of Transportation's] general maximum-hours regulations, the FLSA's overtime-wage provisions apply to that driver if he spends all or part of his time driving a small vehicle. The mandatory 'shall' leaves courts no discretion." *Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13–CV–6789 (CBA)(LB)., 2015 WL 5567073, at *6 (E.D.N.Y. Sept. 21, 2015) (footnotes omitted); *see also Leier v. Lincoln Limousine Brokerage Inc.*, No. 14-CV-3121 (PKC) (VVP), 2018 WL 276345, at *3 (E.D.N.Y. Jan. 3, 2018) (holding the light vehicle exception "clearly defeats Defendants' motion for summary judgment" because employee's work involved operating vehicles weighing 10,000 pounds or less at least "in part," which qualified her

6

for the light vehicle exception even though she also drove vehicles accommodating eight or more passengers). In short, the court must deny summary judgment if the record contains evidence sufficient for a factfinder to conclude Mr. Gensoli spent part of his time driving a vehicle weighing less than 10,000 pounds.

The record contains such evidence. At his deposition, Mr. Gensoli stated he drove a ten-foot U-Haul truck for the first "month-and-a-half [or] two months" he worked for Miner, Inc. (Doc. 597 at 42–43, 97:1–98:12; Doc. 732 at 26, 44:10–13.) Mr. Gensoli also testified he drove a ten-foot U-Haul truck and a fifteen-foot U-Haul truck for 2LS4G. (Doc. 597 at 43, 98:13–18.) Contrary to FedEx's assertion, Mr. Gensoli has introduced evidence that the GVWR of the ten-foot U-Haul is a maximum of 8,600 pounds—that is, less than 10,000 pounds. (Doc. 679 at 12, n.2.) Moreover, Mr. Gensoli testified that his "regular truck"—the truck he drove after the first several months of U-Haul rentals—was a Chevy Silverado that he was "95 percent" certain had a GVWR of under 10,001 pounds. (Doc. 732 at 30, 100:10–23.)

FedEx contends Mr. Gensoli's testimony does not defeat summary judgment because, in FedEx's view, the testimony is unclear on whether the Chevy Silverado he regularly drove had a GVWR of 10,000 pounds or less. The court is not persuaded. Courts reviewing summary judgment motions "generally should not weigh evidence or assess the credibility of witnesses." *See Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (citation modified). In "the rare circumstance" when a non-moving party relies "almost exclusively on her own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for" the non-moving party, "and thus whether there are any 'genuine' issues of material fact, without making some assessment of" the non-moving party's account. *See Bentley v. AutoZoners, LLC*,

7

935 F.3d 76, 86 (2d Cir. 2019) (citation modified). In such a situation, courts must "identify more than record ambiguity or incompleteness to conclude that" a party's testimony "could not raise a genuine issue of fact." *Id.* Rather, a court must find that the contradictions between other portions of the record and the party's testimony are "inescapable and unequivocal" before concluding the party's testimony raised only "a sham issue of fact." *Id.* (citation modified). Put another way, the non-moving party's version of the facts must be "so utterly discredited by the record that no reasonable jury could have believed" it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court sees no inescapable and unequivocal contradictions between Mr. Gensoli's testimony and other parts of the record that would allow the court to conclude Mr. Gensoli's testimony raised only "a sham issue of fact." Mr. Gensoli testified at his deposition that he was "[n]ot a hundred percent, but [he] would say 95 percent" certain the Chevy Silverado had a GVWR of less than 10,001 pounds. (Doc. 597 at 43, 100:10–23.) Any inconsistencies require "assessments of credibility" that "are matters for the jury, not for the court on summary judgment." *See Sanchez as Est. of Munson v. Helen Porter Nursing Home, Inc.*, Case No. 2:20-cv-153, 2023 WL 6516406, at *5 (D. Vt. Oct. 5, 2023) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553–54) (2d Cir. 2005)).

In short, based on FedEx's records, indicating the weight of certain vehicles driven by Mr. Gensoli is unknown, and Mr. Gensoli's testimony, there are disputed issues of fact about whether Mr. Gensoli's employment would fall within the light vehicle exception. *See Hinds v. FedEx Ground Package Sys., Inc.*, Case No. 18-cv-01431-JSW, 2020 WL 12048882, at *8 (N.D. Cal. June 1, 2020) (denying summary judgment when records showed employee drove a light vehicle nineteen days and vehicles with an unknown GVRW an additional nineteen times and employee

8

testified that for his first three weeks to a month he drove a light vehicle and on ten occasions after that he drove what he characterized as a small van.)

### ii. Judicial estoppel is not appropriate here because FedEx has not shown prejudice or that the prejudice requirement is not applicable here.

FedEx also argues Mr. Gensoli is judicially estopped from arguing that "unknown" vehicles should be assumed to be light vehicles because Mr. Gensoli allegedly took the opposite position when asking the court to dismiss other opt-in plaintiffs earlier in the lawsuit. (Doc. 730 at 9–10.) Second Circuit "cases make clear" that, before judicially estopping a litigant, the court must ask "whether the prior inconsistent position in question gave the party to be estopped an 'unfair advantage' over the party seeking estoppel." *See Clark v. AII Acquisition, LLC*, 886 F.3d 261, 267 (2d Cir. 2018) (citing *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017)). Assuming, without deciding, that Mr. Gensoli or his attorneys did take a different position on light vehicles previously in this case, nothing in the record before the court suggests the prior inconsistent position prejudiced FedEx in any way. FedEx has not identified any prejudice and acknowledged at the hearing on this motion that there was "no ultimate prejudice to FedEx." (Doc. 802 at 15:1–4.) FedEx does not argue this case falls within an exception to the requirement of showing unfair advantage against the party seeking estoppel, and the court sees no indication such an exception would apply here. *See Clark*, 886 F.3d at 267. Because FedEx has shown no prejudice, judicial estoppel is unnecessary.

In summary, Mr. Gensoli has shown a dispute of material fact regarding whether the light vehicle exception applies to his employment, and FedEx has not shown Mr. Gensoli is judicially estopped from relying on evidence of unknown vehicle weight in support of the light vehicle exception. FedEx has not met its burden of showing entitlement to summary judgment on this ground.

**B.  Whether Mr. Gensoli Has Produced Sufficient Evidence to Permit a Reasonable Factfinder to Return a Verdict in His Favor on All Elements of His FLSA Claim**

**i.  The court declines to grant summary judgment on FedEx's statute of limitations argument because it is premature on this record.**

FedEx contends Mr. Gensoli is outside the statute of limitations to bring his claim under the FLSA.  (Doc. 596 at 23.)  The FLSA generally has a two-year statute of limitations, but "willful" violations extend the statute of limitations to three years.  FedEx argues summary judgment should be granted on the FLSA claim because Mr. Gensoli has not offered sufficient evidence that FedEx knew or showed reckless disregard as to whether its conduct violated the FLSA.  (Doc. 596 at 17–20); *see also* 29 C.F.R. § 578.3(c).  Mr. Gensoli disagrees for two reasons: 1) courts often find it premature to determine whether an employer's conduct is "willful" under the FLSA before determining whether there was an underlying violation of the FLSA, (Doc. 679 at 16–17); and 2) Mr. Gensoli contends there is sufficient evidence that FedEx was aware that drivers were working overtime and were not adequately compensated, (*id.* at 18–19).

Courts in the Second Circuit have recognized that willfulness often turns on fact-intensive questions concerning the employer's knowledge and state of mind and have found the issue is properly resolved by the trier of fact.  *See, e.g., Inclan v. N.Y. Hosp. Grp., Inc.,* 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) (citation modified) ("Because of the difficulty in discerning, as a matter of law, whether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, courts in this Circuit have generally left the question of willfulness to the trier of fact."); *Perry v. City of New York,* No. 13-CV-1015, 2018 WL 1474401, at *8 (S.D.N.Y. Mar. 26, 2018) (declining to resolve issue of willfulness on summary judgment when disputed issues of fact existed regarding liability because those disputes also precluded summary judgment on willfulness).

10

Applying those principles here, the record contains sufficient evidence from which a reasonable factfinder could conclude that FedEx knew or recklessly disregarded the possibility that drivers such as Mr. Gensoli were not being paid overtime compensation required by the FLSA. In particular, a reasonable factfinder could view FedEx's alleged ability to monitor driver hours, review scanner data, assess compliance with federal and state employment law, and obtain payroll records as evidence that FedEx had more than a remote or passive relationship to the challenged pay practices. (*See, e.g.*, Doc. 680 at 10; *id.* at 92–94, ¶¶ 6–13; *id.* at 119–21, 66:1–68:6; Doc. 777-1.) A factfinder could also conclude that, if FedEx had information showing drivers were on duty for more than forty hours in a given week and could determine whether overtime was being paid, its failure to ensure compliance amounted to reckless disregard rather than mere negligence. The court declines to dismiss Mr. Gensoli's overtime claim under the FLSA on statute of limitations grounds at summary judgment.

### ii. Mr. Gensoli has shown a dispute of material fact regarding whether he got paid for his overtime hours.

The parties disagree on the burden of proof for Mr. Gensoli's overtime claim under the FLSA. Mr. Gensoli contends that FedEx, as his joint employer with the ISPs, had the burden to maintain accurate payroll records and to produce them when requested. (Doc. 679 at 14.) If an employer fails to do so, courts may rely on reasonable inferences raised by employees (for example, Mr. Gensoli's testimony) regarding the wages owed, even if the evidence of owed wages is incomplete. (*Id.*) Mr. Gensoli also points to case law concluding there is a rebuttable presumption that a weekly salary covers forty hours of work, and the employer must rebut the presumption by showing an agreement that the salary covers a different number of hours. (*Id.* at 25–26.) Mr. Gensoli argues his testimony that he was paid a flat weekly rate regardless of the

11

number of hours he worked creates an issue of material fact as to whether he was paid for his overtime hours. (*Id.*)

FedEx disagrees for two reasons. First, FedEx argues that Mr. Gensoli has not proven that FedEx was his joint employer and therefore required to maintain records under the FLSA. (Doc. 730 at 22.) FedEx also points out that it is unaware of any authority requiring disputed joint employers to maintain records. (*Id.*)

Second, FedEx contends that, even if it were Mr. Gensoli's joint employer, Mr. Gensoli has not met his burden to show that his overtime was uncompensated. (*Id.* at 23.) FedEx does not agree there is a rebuttable presumption that a flat weekly salary covers only forty hours, noting that federal courts have different views on this question. (*Id.* at 19–21.) FedEx argues Mr. Gensoli has offered no evidence on summary judgment that his weekly salary was intended to compensate him for only forty hours and the parties' actual practice of driving fifty to sixty hours per week shows that the fixed weekly salary was intended to compensate Mr. Gensoli for all hours worked. (*Id.* at 21.) FedEx asserts it is entitled to summary judgment on the FLSA overtime claim because "all of the evidence proves that [Mr.] Gensoli understood that [the] flat weekly salary was intended to compensate him for all hours worked each week," and, therefore, Mr. Gensoli's overtime was compensated because it was factored into his weekly salary. (*See id.* at 21.)

### 1. Whether the FLSA Requires a Joint Employer to Keep Employment Records

The FLSA defines an "employer" in relevant part as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The FLSA requires "[e]very employer subject to any provision of this chapter or of any order issued under this chapter" to "make, keep, and preserve such records of the persons employed by" the employer "and of the wages, hours, and other conditions and practices of employment maintained

12

by" the employer. 29 U.S.C. § 211(c). Courts have generally held that the statutory definition of "employer" must be broadly construed to effectuate the remedial purposes of the Act. *See, e.g.,* *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) ("*Zheng I*"); *Reich v. Circle C Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 406 (7th Cir. 2007). An employee may have more than one employer under the FLSA. *Zheng I*, 355 F.3d at 66; *see also Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

The plain language of the FLSA, the need for courts to broadly construe the FLSA to effectuate its remedial purposes, and case law interpreting the FLSA and similar statutes support the conclusion that joint employers must maintain employment records under the FLSA to the same extent required of a single employer. *See Sobaszkiewicz v. FedEx Corp.*, 2022 WL 4004773, at *10 (N.D. Cal. Sept. 1, 2022) ("[I]f FedEx were found to be a joint employer, the language of [California's substantively similar recordkeeping statute] indicates that FedEx would indeed be required to maintain payroll records."); *Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 627–29 (W.D. Tex. 1999) (finding joint employer liable for noncompliance with recordkeeping provisions of The Migrant and Seasonal Agricultural Worker Protection Act requiring workers' payroll statements to include bases on which wages are earned, number of hours worked, total pay period earnings, specific sums withheld and purpose of each sum withheld, net pay, and employer's name, address, and employer identification number); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011) (citing *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 944, 946 (2d Cir. 1959)) ("[A]n employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable."); *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017) (citing *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305, 307, 310 (4th Cir. 2006)) (holding that joint employers are jointly and severally liable for any violation of the FLSA).

13

FedEx has offered no authority to the contrary. Therefore, the FLSA requires FedEx to maintain employment records for Mr. Gensoli if Mr. Gensoli shows FedEx was his joint employer.

### 2. Whether Mr. Gensoli Has Produced Sufficient Evidence That FedEx Was His Joint Employer

The Second Circuit has established a six-factor, non-exclusive test for joint employment, recognizing the analysis is necessarily extremely fact-specific. *Zheng I*, 355 F.3d at 71–72. The determination of joint employment is a mixed question of law and fact that is properly resolved by a jury rather than the court. *Zheng v. Liberty Apparel Co., Inc.*, 617 F.3d 182, 185–86 (2d Cir. 2010) ("*Zheng II*").

The record contains sufficient disputed evidence of joint employment under the *Liberty* factors—and, by extension, sufficient evidence that FedEx as joint employer was required to keep employment records for Mr. Gensoli—to submit the question to a factfinder. A court applying the *Liberty* factors considers:

(1) whether [putative joint employer's] premises and equipment were used for the plaintiffs' work;

(2) whether the [putative joint employers] had a business that could or did shift as a unit from one putative joint employer to another;

(3) the extent to which plaintiffs performed a discrete [job] that was integral to [putative joint employer's] process of production;

(4) whether responsibility under the contracts could pass from one subcontractor to another without material changes;

(5) the degree to which the [putative joint employer] or [its] agents supervised plaintiffs' work; and

(6) whether plaintiffs worked exclusively or predominantly for [putative joint employer].

*Zheng I*, 355 F.3d at 71–72.

The first *Liberty* factor weighs against FedEx being Mr. Gensoli's joint employer. The record contains no evidence that Mr. Gensoli used FedEx's premises or equipment for his work.

14

The second factor weighs in favor of joint employment. Record evidence indicates that, through its ISP Agreement, FedEx uniformly imposes the same basic job duties on all its drivers. These duties include: collecting packages from the FedEx terminal; delivering packages to the customer under FedEx's detailed rules; collecting and transmitting customer signatures and scanning packages under FedEx's detailed rules; picking up packages and delivering them to the FedEx terminal; returning undelivered packages to the FedEx terminal; and preparing daily logs and vehicle inspection reports, which must be submitted to FedEx. (*See* Doc. 680 at 31–32, ¶¶ 2.1– 2.7.)

The third factor also weighs in favor of joint employment. FedEx operates a nationwide package delivery network, and package delivery drivers are unquestionably integral to FedEx's business.

The fourth factor further weighs in favor of joint employment. With minimal exceptions, the material terms within the ISP agreements are consistently identical. (*See id.* at 74, 31:1–17; 75–81, 36:22–42:16; 83, 137:4–18; 84–85, 142:12–143:8; 100, 21:7–20; 101, 25:10–21; 102, 74:13–22; 103, 78:2–16; 104, 84:17–21.)

The fifth factor weighs heavily in favor of joint employment. The record contains several examples of FedEx supervising the drivers' work, including:

- FedEx's ISP Agreement establishes a list of rules and requirements that every driver must adhere to. These rules and requirements include: commercial delivery signature requirements; residential delivery package release requirements; alcohol delivery requirements; attempted deliveries and pickups, including making "three attempts on different Service Days to deliver any package"; indirect signature requirements; direct signature requirements; adult signature requirements; how to "release packages" (where and how to place them); how to complete "indirect" deliveries; how to complete appointment deliveries; when and how to complete evening deliveries; how to complete date certain deliveries; how to complete deliveries in which the recipient is billed; collecting charges when deliveries are paid for at the time of pickup; requirements for package scanning; requirements for scanner data uploading; requirements for noting undelivered packages; timely

15

completing a Driver Release Verification; timely completing a Confirmation of Delivery Form; and requirements for third-party deliveries. (*See* Doc. 680 at 35–38.)

- FedEx's ISP Agreements also establish hiring requirements applicable to all drivers. Drivers must pass controlled substances and alcohol screening and agree to random screenings by FedEx. (*See id.* at 54.) Each applicant's driving record must also meet eight criteria, set by FedEx, over the prior sixty months. (*Id.*) An applicant's driving record must also satisfy nine criteria, set by FedEx, over the prior thirty-six months. (*Id.* at 54–55.) The ISP Agreements also establish specific driving experience and training requirements. (*Id.* at 53.) FedEx also has the power to conduct investigations and inquiries regarding the driving experience and background of drivers seeking employment to ensure they have met these standards. (*See id.*)

- FedEx also has uniform authority to suspend and terminate drivers through its standardized disqualification process. FedEx maintains a policy that includes a series of separate offenses that require a driver's work for FedEx to be terminated or suspended. (See *id.* at 55–57.) If a driver has committed one of these offenses, then that driver is either no longer permitted to drive for FedEx (through any ISP) or must be suspended for a time period specified by FedEx. (*See id.*; *see also id.* at 11.) FedEx also has the authority to conduct investigations to make a "preliminary determination" that a driver is "in violation" or is "guilty" of any of these "offenses." (*See id.* at 57, ¶ 1.7.)

- FedEx has agreed to "indemnify and hold harmless" ISPs and drivers for the actions of all drivers while operating a vehicle in connection with their work for FedEx. (*See id.* at 20, ¶ 14.2(B).) FedEx requires that it be informed of any traffic citations involving drivers. (*See id.* at 59, ¶ 5.5.) FedEx must also be informed of any accident involving drivers, regardless of whether there is any personal injury or who is at fault. FedEx requires all drivers to maintain an "Accident Packet" in their vehicle "at all times" and fill it out any time there is an incident or accident. (*See id.*, ¶ 5.3.) FedEx states that it will "make a good faith determination of the preventability of each accident" in which a driver is involved, according to uniform standards. (*See id.* at 41, ¶ 1.6.) FedEx's ability to determine whether an accident was "preventable" gives it significant control over the drivers because a driver who is involved in certain "preventable" accidents will be restricted from driving for FedEx's ISPs. (*See id.* at 55–56.)

- FedEx requires ISPs to provide FedEx with drivers' federal and state tax forms and quarterly state unemployment insurance/wage reports. (*See id.* at 10.) FedEx maintains drivers' confidential employment records. (*See id.* at 119–21, 66:1-68:6.)

- FedEx has also issued a uniform document titled "Electronic Compliance Assessment Overview," which contains detailed step-by-step instructions explaining how FedEx employees should conduct wage and hour assessments

16

related to the drivers. (*See* Doc. 777-1; Doc. 680 at 92–94, ¶¶ 6–13.) FedEx reserves the right to terminate ISPs for failing to maintain proper employment records for its drivers. (*See* Doc. 680 at 9–10, 20–21.)

The sixth factor weighs in favor of joint employment. FedEx's ISP Agreements also bar drivers from working for FedEx's competitors. (*Id.* at 11, ¶ 6.4 (providing that the ISP must agree "to the condition that ISP's Personnel assigned by it to provide Services under this Agreement not be employed by or under contract with a competitor of [FedEx].")).

In sum, drawing all inferences in Mr. Gensoli's favor, the record contains sufficient evidence from which a reasonable juror could conclude Mr. Gensoli was FedEx's employee. *See Zheng I*, 355 F.3d at 77. FedEx is not entitled to summary judgment on the basis that it was not Mr. Gensoli's employer.

### 3. Whether Mr. Gensoli Has Shown Sufficient Evidence That He Did Not Get Paid for His Overtime

The Second Circuit has observed that existing authorities do "not resolve whether the salary of an employee who regularly works more than forty hours per week should or should not be presumed to include an overtime premium." *Adams v. Dep't of Juv. Just.*, 143 F.3d 61, 67 (2d Cir. 1998). District courts in the Second Circuit do not uniformly apply a rebuttable presumption that a weekly salary covers only the first forty hours worked unless the parties have agreed otherwise. *See, e.g., Hernandez v. J & M Corona Deli Corp.*, No. 23-CV-9120 (RER)(PK), 2025 WL 2597767, at *9 (E.D.N.Y. Aug. 13, 2025), *report and recommendation adopted,* 2025 WL 2591538 (E.D.N.Y. Sept. 8, 2025). Several decisions in the Second Circuit, however, have applied the rule that an employer asserting that an employee's weekly salary includes FLSA-required overtime payments must prove the employer and employee contracted for the weekly salary to include the overtime period. *See, e.g., Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 50 (S.D.N.Y. 2023) (collecting cases); *Estanislau v. Manchester Devs., LLC*, 316 F. Supp. 2d 104,

108 (D. Conn. 2004); *Ahn v. Sun Cleaners Inc.*, No. 19-CV-5919 (DLI) (PK), 2022 WL 586022, at *7 (E.D.N.Y. Feb. 18, 2022), *report and recommendation adopted*, 2025 WL 845552 (E.D.N.Y. Mar. 18, 2025).

The FLSA embodies Congress's intent to "give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *See Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (citation modified). Its overtime provisions must be interpreted to acknowledge their "remedial and humanitarian" purpose, not "in a narrow, grudging manner." *See Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). The FLSA's purpose informs how the court should treat a fixed weekly salary when the parties have not clearly stated whether the salary compensates only the first forty hours worked or also includes overtime compensation for hours above forty.

The rebuttable presumption gives practical effect to the FLSA's overtime mandate. Unless both sides have clearly agreed that overtime compensation is included, the statutory purpose of requiring additional pay for overtime work is not achieved. *See Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) (citing *Wirtz v. Harper Buffing Mach. Co.*, 280 F. Supp. 376, 381 (D. Conn. 1968)). A rule that silently folds overtime premiums into a fixed salary merely because the employee regularly worked more than forty hours would dilute the statute's protection by holding ambiguity against the employee and giving bad faith employers cover to unilaterally impose overtime without a demonstrated agreement. As a result, the court adopts the rebuttable presumption that a weekly salary covers only the first forty hours worked unless the parties have an alternate agreement.

18

Here, FedEx has offered no evidence of an alternate agreement and has failed to rebut the presumption that Mr. Gensoli's weekly pay was intended to compensate him for forty hours per week. As a result, summary judgment is not warranted if the record contains evidence that Mr. Gensoli worked over forty hours in any workweek.

Mr. Gensoli has provided adequate record evidence to show that he has worked forty hours in a particular workweek as well as some uncompensated time in excess of the forty hours. *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *see also Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (alteration in original) ("[A] plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice."). According to FedEx's data, Mr. Gensoli drove for fifty-five total weeks while being paid through 2LS4G and Miner, Inc. between April 18, 2017 and April 28, 2018. (*See* Doc. 597 at 52–56.) Mr. Gensoli testified he would generally arrive at the terminal around 7:30 a.m. or 8:00 a.m. while being paid through 2LS4G, and at 7:00 a.m. while being paid through Miner, Inc. (*See* Doc. 680 at 133–34, 68:20-69:12.) He would, however, arrive as early as 6:00 a.m. during busy periods. (*See id.* at 134, 69:2–12; 135, 73:11–23; 138–41, 76:19–79:3.) Mr. Gensoli would not log into the scanner as "on duty" until later in the morning when he was dispatched from the terminal, usually around 9:30 a.m. (*See id.* at 135–39, 73:11–77:22; 149–50, 104:21–105:25.) As a result, the scanner data is "missing a couple hours every single morning." (*See id.* at 155–58, 131:4–134:4.) Mr. Gensoli typically worked until 6:00 p.m. or 6:30 p.m., though he would work much later during peak periods. (*See id.* at 142–44, 83:1–85:1.) Mr. Gensoli never took breaks while driving for FedEx. (*See id.* at 153–54, 117:9–118:18.). Mr. Gensoli testified that, on average, he worked between fifty and sixty

hours per week. (*See id.* at 161, 147:8–10). Mr. Gensoli was paid a flat weekly rate of between $620 and $700, regardless of whether he worked five or six days per week, and regardless of how many hours he worked. (*See id.* at 151–52, 112:25–113:20.) Because the record shows a dispute of fact regarding whether Mr. Gensoli was paid for his overtime, the court must deny summary judgment on Mr. Gensoli's FLSA overtime claim.

## II. Summary judgment is not warranted on Mr. Gensoli's overtime claim under Vermont state law.

### A. Mr. Gensoli is within Vermont's statute of limitations for his claim.

FedEx appears to have conceded that Mr. Gensoli is within the Vermont statute of limitations. FedEx initially argued that Mr. Gensoli's claim was barred by a two-year statute of limitations under 21 V.S.A. § 342 and 12 V.S.A. § 520. (Doc. 596 at 23.) Mr. Gensoli disagrees, relying on a recent decision in the District of Vermont making clear that overtime claims brought under 21 V.S.A. § 384 are subject to a six-year statute of limitations, not a two-year statute of limitations. (Doc. 679 at 23–24); *see also Gehlbach v. Gifford Med. Ctr., Inc.*, Case No. 2:23-cv-00066, 2024 WL 4108538, at *5–9 (D. Vt. Sept. 6, 2024). In its reply brief, FedEx "agrees with Plaintiffs that in *Gehlbach v. Gifford Medical Center*, 2024 WL 4108538 (D. Vt. Sept. 6, 2024), the court concluded that claims for unpaid overtime brought pursuant to 21 V.S.A. § 384(b) are subject to a six-year statute of limitations." (Doc. 730 at 19.) To the extent FedEx still argues Mr. Gensoli's claim falls outside of the Vermont statute of limitations, the court rejects this argument under *Gehlbach*.

### B. Mr. Gensoli has identified sufficient record evidence to survive summary judgment on his overtime claim under Vermont law.

FedEx contends Mr. Gensoli is not entitled to overtime compensation under Vermont state law because Mr. Gensoli is subject to the Motor Carrier Act exemption and the overtime provisions of Vermont state law do not apply to employees exempted from overtime under the Motor Carrier

20

Act. (Doc. 596 at 22); *see also* 21 V.S.A. § 384(b)(5). Mr. Gensoli did not explicitly respond to this argument in his opposition. The parties seem to agree that, if summary judgment is appropriate on the FLSA claim under the Motor Carrier Act, FedEx is also entitled to summary judgment on the Vermont state law claim.

As discussed above, disputed issues of fact exist that preclude summary judgment on Mr. Gensoli's FLSA claim. For the same reasons, the court denies FedEx's motion for summary judgment on Mr. Gensoli's overtime claim under Vermont state law.

### III. The court denies FedEx's request to determine the method for calculating damages on summary judgment as premature.

FedEx asks the court to determine the legal standard for calculating damages as a matter of law. To summarize, FedEx asks the court to find that the FLSA calculates regular pay for a weekly worker by dividing the amount they got paid that week by the hours they worked that week. (Doc. 596 at 25.) Mr. Gensoli argues this calculation does not apply to him because, as discussed above, courts have consistently held that the flat rate only covers the first forty hours worked unless the parties explicitly agree that the flat rate includes overtime. (Doc. 679 at 25–26.) For this reason, Mr. Gensoli contends the court should either calculate the regular rate of pay by dividing the weekly wage by forty hours or decline to decide the proper method of calculation on summary judgment because the question of whether Mr. Gensoli's weekly pay was intended to cover more than forty hours is an issue of fact for trial. (*Id.* at 26.)

FedEx also asks the court to order that overtime compensation should be calculated at one-half of the regular rate for all hours worked over forty per week. (Doc. 596 at 26.) Mr. Gensoli disagrees based on the presumption that Mr. Gensoli's weekly rate was intended to cover forty hours only. (Doc. 679 at 26.) From Mr. Gensoli's perspective, any hours he worked over forty hours were entirely uncompensated. (*Id.* at 27.) Therefore, he is entitled to overtime compensation

21

at one-and-a-half times his regular rate. (*Id.*) In the alternative, Mr. Gensoli argues that this issue should be reserved for trial, when the factfinder can determine whether Mr. Gensoli's pay covered all his hours or just the first forty hours per week. (*Id.*)

The court declines to decide the proper method of damages calculation on summary judgment because the question of whether Mr. Gensoli's weekly pay was intended to cover more than forty hours is an issue of fact for trial. FedEx has not introduced evidence of an agreement on summary judgment, so, at this time and without additional evidence, the presumption that the weekly salary covered only the first forty hours of work per week applies. FedEx may introduce evidence of such an agreement at trial that it did not introduce at summary judgment.

### Conclusion

For the reasons above, FedEx's motion for summary judgment (Doc. 594) is DENIED.

DATED at Rutland, in the District of Vermont, this 15th day of May 2026.

Mary Kay Lanthier
United States District Judge

22